IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| JHONNY LEYVA BELLO,<br><br>                    Plaintiff,<br><br>v.<br><br>LIBERTY MUTUAL FIRE INSURANCE COMPANY,<br><br>                    Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART [23] DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>Case No. 2:23-cv-00214-CMR<br><br>Magistrate Judge Cecilia M. Romero |

All parties in this case have consented to the undersigned conducting all proceedings, including entry of final judgment (ECF 11). *See* 28 U.S.C. § 636(c); *see also* Fed. R. Civ. P. 73. Before the court is Defendant Liberty Mutual Fire Insurance Company's (Defendant) Motion for Summary Judgment (Motion) (ECF 23). The court also considered Plaintiff Jhonny Leyva Bello's (Plaintiff) response (ECF 24) and Defendant's reply (ECF 28). On January 30, 2025, the court heard oral argument on the Motion (ECF 31). Having carefully considered the relevant filings, case law, and oral argument, the court GRANTS IN PART and DENIES IN PART Defendant's Motion as set forth below.

## I.    BACKGROUND

### A.    The Accident and Workers' Compensation Claim

On March 14, 2020, Plaintiff, while working for Integrated Communication Services, Inc. (ICS) was involved in a motor vehicle accident with Dario Ramirez (Ramirez) (ECF 23-2 at 3–9). At the time of the accident, Plaintiff was engaged in the scope and course of work, driving a company car and was en route to provide services to an ICS customer (*id.*). The accident occurred when both parties were exiting a parking lot and Ramirez reversed his vehicle into the vehicle

driven by Plaintiff (ECF 23-2 at 30). The airbags did not deploy in the accident and the responding officer noted in his report that there was "minimal damage to both vehicles" (*id.* at 11, 30).

Plaintiff maintains that, as a result of the accident with Ramirez, he sustained injuries to his shoulder and neck (*id.* at 6–7). To resolve the pain that he was feeling in his neck, shoulder, and lower back, Plaintiff began receiving chiropractic therapy (*id.*). On June 18, 2020, Plaintiff received an MRI of his shoulder (ECF 23-12 at 2). A radiologist, Tom Berg (Berg), reviewed the MRI results and opined in a written report that there was a "[t]ype IIb SLAP tear" which he "suspect[ed] is likely remote" given various other factors that he observed (*id.*).[1] Approximately one month later, on July 15, 2020, Plaintiff met with Dr. John Sonnenberg (Sonnenberg) who recommended that Plaintiff receive surgery on his right shoulder (ECF 23-6 at 9). Sonnenberg later testified that he disagreed with Berg's opinion that the injury was not caused by the accident and, in particular, Sonnenberg disagreed with Berg's description of Plaintiff's injury as "remote" (*id.* at 26–27).[2]

In November of 2020, consistent with Sonnenberg's recommendation, Plaintiff received shoulder surgery (ECF 23-2 at 13). Plaintiff then made a claim against Ramirez's insurance carrier (*id.* at 18). As a result, on December 29, 2021, Plaintiff received $25,000—Ramirez's policy limit—after executing a full release related to his claims against Ramirez (*id.*).

---

[1] Plaintiff objects to Berg's statements in the MRI report as "hearsay" (ECF 24 at 10). Berg's statements however are not being offered for the truth of the matter asserted, that is, they are not offered to demonstrate that Plaintiff's injury was "remote." Instead, Berg's statements are included in the court's recitation of the facts because Defendant's claims representative later indicated that she relied, in part, on the statements in Berg's report. Plaintiff does not dispute that the claims representative testified that Berg's report was one of the items she relied on in making her decision regarding Plaintiff's claim (*id.* at 17).

[2] At various points in the briefing, Plaintiff takes issue with Defendant's description of Berg's opinion—that Plaintiff's injury was not caused by the accident—claiming that Defendant cannot "give an expert opinion interpreting Plaintiff's MRI results" (ECF 24 at 10). Perhaps if the court only had Defendant's interpretation of Berg's report, then Plaintiff's argument would have more force, however, the court also has the testimony of Plaintiff's expert, Sonnenberg, wherein Sonnenberg testified that Berg's report included an opinion that the shoulder injury was not caused by car accident (ECF 23-6 at 26–27). Thus, to the extent that Berg's report needed an expert to interpret the implications of his stated opinion the court has Sonnenberg's testimony to that effect.

Shortly after the subject car accident, Plaintiff's supervisor at ICS was informed of the incident and ICS made a claim for workers' compensation on Plaintiff's behalf (*id.* at 7). Ultimately, the workers' compensation carrier paid for what it considered to be Plaintiff's medical expenses related to the accident which amounted to $881.25 in medical benefits (ECF 24-3 at 3). The workers' compensation carrier also asserted a lien on any third-party settlement related to his injuries for that amount (*id.*).[3] While the workers' compensation carrier paid for Plaintiff's initial treatment it denied payment for Plaintiff's MRI and shoulder surgery due to the "mechanism of injury" not being "consistent" with the diagnosis (ECF 23 at 11; ECF 23-10 at 56–63).[4]

Plaintiff did not appeal the amount he received from the workers' compensation carrier and, more specifically, he did not appeal the denial related to the refusal to pay for his shoulder surgery (ECF 23 at 12). There is no apparent dispute between the parties that if the workers' compensation carrier had found that Plaintiff's injury was caused by the accident that the entirety of Plaintiff's medical expenses would have been covered by his workers' compensation claim.

### B.    The Underinsured Motorist Claim

On January 5, 2022, rather than appealing the workers' compensation decision, Plaintiff made a claim against Defendant for underinsured motorist (UIM) benefits (ECF 23-2 at 18–20; ECF 23-4 at 32). Christine Muller (Muller), a Senior Claims Representative for Defendant, primarily handled the decision related to Plaintiff's UIM claim (ECF 23-7 at 2). In February 2022, while investigating Plaintiff's UIM claim, one of Defendant's other representatives reached out to

---

[3] While not relevant to the court's analysis in ruling on the Motion, the court notes that the lien amount was later changed to $952.26 (ECF 23-5 at 6).

[4] Plaintiff did not dispute that most of his workers' compensation damages claims were denied, and he further did not dispute that the denial was based on the findings by the workers' compensation carrier related to the mechanism of injury (ECF 24 at 16). Plaintiff did however lodge his disagreement as to the validity of the denial of his claims in response to Defendant's undisputed fact on this point (*id.*).

the workers' compensation carrier[5] asking about its denial of Plaintiff's request for medical benefits pursuant to his workers' compensation claim (ECF 28-9 at 3). A representative for the workers' compensation carrier responded that they declined to cover Plaintiff's MRI and shoulder surgery "due to the mechanism of injury" not being "consistent with the diagnosis" (*id.* at 2). When asked whether an independent medical examination was done, the workers' compensation carrier's representative responded that there was a nurse, a medical doctor, and regional medical director "on file" (*id.* at 1).

In the following months, Defendant, through Muller, denied Plaintiff's claim. While the exact date of the denial is unclear, the record does reflect that the claim had been denied sometime prior to May 4, 2022, because by May 4 Plaintiff was clearly attempting to persuade Muller to reconsider the denial of his UIM claim and perhaps negotiate a more favorable settlement (ECF 23-10 at 34). Based on the undisputed facts, it took Defendant four months, at most, after receiving Plaintiff's UIM claim to render its decision and deny the claim.

Later, during her deposition, Muller testified that she relied upon the following information in deciding Plaintiff's UIM claim:

---

[5] Plaintiff finds it problematic that the workers' compensation carrier includes documents issued from, among others, "Liberty Mutual Insurance Company" and the UIM carrier is "Liberty Mutual Fire Insurance Company," arguing that because "these entities operate under the name 'Liberty Mutual', and all apparently have connections to the handling of Plaintiff's workers' compensation claim or UIM claim suggest that they are all actually the same company, or at the very least they are all so tightly affiliated that they functionally act as one company in the handling of claims" (ECF 24 at 14–15). Even if the court were to accept as true, that the workers' compensation carrier and UIM carrier are essentially the same company, Plaintiff has not made it clear how this would be significant to the pending Motion. Plaintiff has not provided any case law or legal support to indicate that the analysis would somehow differ if the UIM carrier and workers' compensation carrier were operating under the same parent company, nor does Plaintiff suggest that this is an unlawful arrangement suggestive of some wrongdoing. Accordingly, the court does not find the fact that these entities operate under a shared name of "Liberty Mutual" to be a material fact for purposes of deciding the Motion.

a. "Plaintiff's medical records showed pre-existing injury and pain in the right shoulder, specifically records of a fall from a ladder in 2019[6] where he fell on his right side."

b. "Confirmation from the workers' compensation carrier that a physician had reviewed the claim and determined that there was no mechanism of injury in the accident to injure the right shoulder."

c. "The radiologist's review of the MRI indicated that Plaintiff's shoulder SLAP tear and related findings were likely chronic and longstanding."

d. "Plaintiff claimed there was vehicle damage, but the accident photos showed no damage to either vehicle."

e. "Ramirez's statements to the investigating officer was that the vehicles only 'touched bumpers' and there was 'no damage.'"

f. "Plaintiff's duties as a cable installer have required him to lift 80-pound ladders about 20-50 feet high since 2005."

g. "Plaintiff was in urgent care after either slipping on ice or carrying a ladder (Plaintiff's description changes between health care providers) within a month prior to the automobile accident."

h. "In March of 2020, Plaintiff visited his chiropractor multiple times and the chiropractor initially noted 'left' shoulder pain but provided no work restrictions and did not mention any shoulder pain or treatment for the shoulder for the next several visits."

i. "Plaintiff had made inconsistent statements to medical providers about his hand placement on the steering wheel."

j. "Sonnenberg performed a shoulder surgery on Plaintiff in November 2020 and his notes and reports indicated that Sonnenberg had minimal information about the car accident and no knowledge about Plaintiff's prior ladder fall and right shoulder medical history."

k. "Plaintiff provided to Liberty Mutual Sonnenberg's post-surgery follow-up records that indicated that as of March 10, 2021: 'The patient claims he is not having any significant pain and I do not feel the patient requires further orthopedic or physical therapy services, I discharged him from our orthopedic clinic' and 'The patient claims he is doing remarkably well and has completed physical therapy. The patient denies any pain' and 'claims he feels he is ready to return to work.'"

l. "All other evidence in the claim file."

(ECF 23 at 12–13).[7] Notwithstanding Muller's assertions that Plaintiff's UIM claim was ultimately

decided based on issues related to medical causation, Defendant "also understood that there was a

---

[6] Plaintiff described this earlier fall during his deposition, confirming that in 2019 he "fell off a ladder," he hurt his "right elbow," and his "right shoulder was sore from that fall" (ECF 23-2 at 14).

[7] Concerning this summary of information that Muller relied on, Plaintiff "does not dispute" that Muller "claimed to have relied on the kinds of alleged facts listed while making her decision" to deny Plaintiff's UIM claim (ECF 24 at

potential coverage dispute concerning whether UIM even applies to this matter given the workers' compensation exclusions within [the insurance policy (Policy)] and under state law" (ECF 23-10 at 12–15).

The Policy in question, which was issued to ICS by Defendant in 2019, contained a UIM coverage provision indicating that the insurance would "not apply" to the "direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law" (ECF 23-8 at 46). The Policy further stated:

> [Defendant] will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible, except for any portion of such payment that a person is not entitled to receive pursuant to Utah Code Ann. Section 34A-2-106(5).

> [Defendant] will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

(*id.* at 47).

At some point, Muller, on behalf of Defendant, offered Plaintiff $5,000, which she referred to as a "cost of defense offer" or, as she described it, a "compromise" which was meant to "avoid litigation" (ECF 23-10 at 54).[8] Plaintiff rejected Muller's compromise offer and initiated the present litigation, asserting in his Amended Complaint two causes of action against Defendant: (1) breach of contract, and (2) breach of the implied covenant of good faith and fair dealing (ECF 6 at 3–4; ECF 23-4 at 12–13).

On August 15, 2024, Defendant filed its Motion for Summary Judgment seeking dismissal of the entirety of Plaintiff's Amended Complaint (ECF 23 at 1). As explained below, at the hearing

---

17). Plaintiff therefore concedes that these facts are "technically" undisputed, however, the court notes that Plaintiff "does dispute the validity of the underlying alleged facts" that Muller relied on (*id.*).

[8] The record is unclear as to the date of this offer, the court can only discern that it was made sometime prior to this litigation being initiated on March 31, 2023 (ECF 1).

however, Defendant clarified the Motion for Summary Judgment does not address a breach of contract claim for general damages under the UIM coverage.

## II.    LEGAL STANDARDS

A "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In making this determination, courts "examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party." *Barber ex rel. Barber v. Colorado Dept. of Revenue*, 562 F.3d 1222, 1228 (10th Cir. 2009) (quoting *T-Mobile Cent., LLC v. Unified Gov't of Wyandotte Cnty.*, 546 F.3d 1299, 1306 (10th Cir. 2008)). "For there to be a 'genuine' dispute of fact, there must be more than a mere scintilla of evidence; to avoid summary judgment, the evidence must be such that a reasonable jury could return a verdict for the nonmoving party." *Aubrey v. Koppes*, 975 F.3d 995, 1004 (10th Cir. 2020) (quoting *Rocky Mountain Prestress, LLC v. Liberty Mut. Fire Ins. Co.*, 960 F.3d 1255, 1259 (10th Cir. 2020)). Thus, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Barber*, 562 F.3d at 1228 (quoting *Bruner v. Baker*, 506 F.3d 1021, 1025 (10th Cir. 2007)). Furthermore, "mere conclusory allegations are insufficient to establish an issue of fact under Fed. R. Civ. P. 56." *Barber*, 562 F.3d at 1228.

## III.    DISCUSSION

### A.    Breach of Contract

There are two categories that Plaintiff's breach of contract claim fall under: (1) the failure to pay medical damages, and (2) the failure to pay general damages. In Defendant's reply memorandum in support of its Motion, and during oral argument before this court, it conceded that it had not presented a basis for the court to dismiss Plaintiff's breach of contract claim related to

general damages (ECF 28; ECF 31). Considering this concession, the court finds it appropriate to deny Defendant's request, as raised in the Motion (ECF 23 at 1), that Plaintiff's breach of contract claim for general damages be dismissed.

Turning to the only remaining contested issue on Plaintiff's breach of contract claim, Defendant asserts that Plaintiff's request for medical damages is precluded under both state law and the Policy exclusions (ECF 23 at 17). The court addresses each argument in turn.

1.   Utah's UIM Statute; Utah Code § 31A-22-305.3 & Utah's Workers' Compensation Act; Utah Code §§ 24A-2-101 to 34A-2-1005

First, the court notes that, in federal court diversity actions, "the law to be applied in any case is the law of the state," meaning Utah law applies to the present suit. *James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d 1207, 1216–17 (10th Cir. 2011) (quoting *Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938)). Utah's UIM Statute provides that "[u]nderinsured motorist coverage . . . does not cover any benefit paid or payable under [the Workers' Compensation Act], . . . ." Utah Code § 31A-22-305.3(4)(c)(i) (2020).[9] Defendant interprets this provision as precluding Plaintiff from recovering medical damages under his UIM claim because those damages are considered "paid" and "payable" under Utah's Workers' Compensation Act, *see* Utah Code §§ 24A-2-101 to 34A-2-1005 (ECF 23 at 19–20).[10] In other words, Defendant believes that because Plaintiff's total medical expenses would have been covered by the workers' compensation carrier if they had

---

[9] Section 31A-22-305.3(4)(c)(i) has since been revised, effective July 1, 2024. *See* Underinsured motorist coverage, ch. 158, § 53, 2024 Utah Laws. Absent one of the narrow exceptions that have been enumerated by Utah's Supreme Court, "courts must apply the law in effect at the 'time of the occurrence' regulated by that law." *State v. Clark*, 251 P.3d 829, 833 (Utah 2011) (quoting *OSI Indus. v. Utah State Tax Comm'n*, 860 P.2d 381, 383 (Utah Ct.App.1993)). The same is true under federal law, as the United States Supreme Court has described "the principle against retroactive legislation, under which courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity." *Vartelas v. Holder*, 566 U.S. 257, 266 (2012). Unless otherwise indicated, the court therefore refers to the 2020 version of the code, which was in effect during the relevant events in question.

[10] While not directly stated in the briefing, the parties seemingly agree that the benefits Plaintiff received pursuant to his workers' compensation claim fall within the purview of the Workers' Compensation Act and no argument has been presented to the contrary.

determined that Plaintiff's injury was caused by the accident, that constitutes a benefit that is available, or "payable," to Plaintiff pursuant to the Workers' Compensation Act. And, under this interpretation, Plaintiff may have been able to receive the full amount of medical benefits he believes are owed to him but Plaintiff declined to challenge that award through the available appeals process. Plaintiff, on the other hand, maintains that because most of the medical expenses under his workers' compensation coverage were denied, those medical damages should not be considered "payable" under the Workers' Compensation Act (ECF 24 at 23–24). After considering the arguments and relevant law presented by the parties, the court agrees with Defendant's interpretation and application of the UIM Statute to this case.

There is no dispute by the parties that the Utah code does not define the term "payable" under the UIM Statute, and they have pointed to no case law from Utah directly defining this term (ECF 23 at 19; ECF 24 at 24). The court must therefore rely on other sources in interpreting the UIM Statute. "[W]hen faced with a question of statutory interpretation," the court's "primary goal is to evince the true intent and purpose of the Legislature." *Marion Energy, Inc. v. KFJ Ranch P'ship*, 267 P.3d 863, 866 (Utah 2011) (quoting *Salt Lake Cnty. v. Holliday Water Co.*, 234 P.3d 1105, 1111 (Utah 2010)). Statutory interpretation further requires that the court "not view individual words and subsections in isolation," rather, "each part or section" of the statute is to "be construed in connection with every other part or section so as to produce a harmonious whole." *Summit Operating, LLC v. Utah State Tax Comm'n*, 293 P.3d 369, 372 (Utah 2012) (quoting *Ivory Homes, Ltd. v. Utah State Tax Comm'n*, 266 P.3d 751, 757 (Utah 2011)). It is also helpful to keep in mind that, in some matters, reviewing statutory provisions "against the backdrop of relevant case law helps illuminate the legislature's intent." *Kamoe v. Ridge*, 483 P.3d 720, 726 (Utah 2021). Furthermore, where an issue is not fully developed by Utah case law, Utah courts often find

guidance in case law from other jurisdictions. *See Energy Claims Ltd. v. Catalyst Inv. Grp. Ltd.*, 325 P.3d 70, 83 (Utah 2014) (looking to "sister states for guidance regarding" an issue that had not been "directly addressed" by the Utah Supreme Court); *see also Arndt v. First Interstate Bank of Utah, N.A.*, 991 P.2d 584, 587 (Utah 1999) (observing that, when presented with "a question of first impression in Utah," the court may look to "case law from other jurisdictions for guidance").

While the parties did not present any case law from Utah directly defining "payable" there does exist other persuasive authority from Utah, interpreting related subsections of the UIM Statute, that is instructive in this matter and that can be used to harmonize the remaining sections of the statute. In *Truck Insurance Exchange v. Rutherford*, 395 P.3d 143 (Utah 2017), the Utah Supreme Court provided guidance on the interplay between UIM coverage and benefits available under the Workers' Compensation Act. *Id.* at 145. The court began by addressing a provision of the UIM Statute which states that UIM coverage is "secondary to the liability coverage of an owner or operator of an underinsured motor vehicle." *Id.* (quoting Utah Code § 31A-22-305.3(3)(k)(i)).[11] The court interpreted this provision to mean that "the driver was 'entitled to be compensated by [the UIM insurer] only for damages *in excess* of those for which she was compensated by the other motorist's insurer.'" *Id.* at 145–46 (quoting *Lopez v. United Auto. Ins. Co.*, 274 P.3d 897, 905 & n.41 (Utah 2012)). In comparing that provision with the provision governing situations where benefits through UIM coverage and workers' compensation benefits are both applicable, the court found it was "clear" that "UIM coverage applies only after the workers' compensation benefits have been exhausted." *Rutherford*, 395 P.3d at 146. The court thus concluded that, similar to the provision related to compensation received through the other motorist's insurer, UIM coverage

---

[11] The UIM Statute has been revised more than once since *Rutherford* was decided, but this particular provision has remained untouched in each iteration of the UIM Statute, *compare* Utah Code § 31A-22-305.3(3)(k)(i) (2016), *with* Utah Code § 31A-22-305.3(3)(k)(i) (2024), thus the court finds the Utah Supreme Court's interpretation of this provision in *Rutherford* highly relevant and persuasive to the present matter.

was only available to cover damages that were in excess of those available under the Workers' Compensation Act. *See id.*

Notably, the UIM Statute at the time of *Rutherford* did not contain the words "paid or payable" however it did state that UIM coverage is "secondary to the benefits provided by" the Workers' Compensation Act, *see* Utah Code § 31A-22-305.3(4)(c)(i) (2016), and the most recent version of the statute states that UIM coverage does not cover "any benefit" under the Workers' Compensation Act and this is "to avoid double recovery," *see* Utah Code § 31A-22-305.3 (2024). In each iteration of the statute, it appears that the purpose has remained unchanged that UIM coverage is intended to serve as a subsidiary basis for benefits not covered through Workers' Compensation Act. From this the court thinks the implication is strong that the words "paid" and "payable" were meant to have the same effect as the other versions of the statute that were in place both before and after the accident and when Plaintiff submitted his claims. *See Marion Energy*, 267 P.3d at 866 (noting that "legislative history" can be helpful guidance in interpreting a statute (quoting *Taylor ex rel. Taylor v. Ogden City Sch. Dist.*, 927 P.2d 159, 167 (Utah 1996)). This in turn suggests that the *Rutherford* court's interpretation of the UIM Statute, that a claimant must first exhaust the workers' compensation benefits available to them before seeking UIM coverage for those same benefits, is applicable to the 2020 version of the statute that applies to Plaintiff's claim.

Beyond the guidance of the Utah Supreme Court, Defendant's position on this matter is also supported by case law from other federal and state courts, from differing jurisdictions, and their interpretations of the word "payable." For example, in interpreting language similar to Utah's UIM Statute, the Tenth Circuit in *Trujillo v. Cyprus Amax Minerals Co. Retirement Plan Committee*, 203 F.3d 733 (10th Cir. 2000), considered a provision which stated that disability

benefits would be reduced by the amount of workers' compensation benefits "payable" to the applicant. *Id.* at 737. The Tenth Circuit found that benefits that are "payable" encompasses "any amounts 'capable of being paid,' 'justly due,' or 'legally enforceable' that arise out of a worker's disability." *Id.* at 737. Defendant has also provided other case law from various jurisdictions that have reached similar conclusions as the Tenth Circuit, finding that "payable" encompasses any benefits that could be recovered in the future.[12] The court finds Defendant's additional cases persuasive in demonstrating that Plaintiff's medical benefits are "payable" under the Workers' Compensation Act and Utah law thus precludes him from recovering those same benefits pursuant to his UIM claim.

Here, it is undisputed that Plaintiff received medical benefits for his workers' compensation claim (ECF 24-3 at 3). And the workers' compensation carrier paid for what it considered to be Plaintiff's medical expenses related to the accident with Ramirez (*id.*). There also seems to be no debate that if the workers' compensation carrier had found that Plaintiff needed shoulder surgery because of any injuries he sustained in the accident, that Plaintiff would be entitled to workers' compensation benefits covering the entirety of that medical expense. Moreover, Plaintiff could have sought to have the workers' compensation award adjusted by appealing the decision of the workers' compensation carrier, but he declined to do so. In applying the relevant case law to those facts, the court finds that the medical benefits Plaintiff received pursuant to his workers' compensation claim are "paid" and "payable" under the Workers' Compensation Act.

---

[12] *See, e.g.*, *Sandberg v. Am. Fam. Ins. Co.*, 722 N.W.2d 359, 363 (N.D. 2006) (construing "'payable' to mean any workers' compensation benefits" that an employee is presently owed or that could be paid in the future); *Am. Foreign Ins. Co. v. Reichert*, 94 P.3d 699, 707 (Idaho 2004) (determining that the term "payable" includes "any future benefits" that the employee may receive in workers' compensation benefits); *Rydingsword v. Liberty Mut. Ins. Co.*, 615 A.2d 1032, 1037 (Conn. 1992) (concluding "that the phrase 'sums . . . payable' is not ambiguous but plainly means an ascertained amount of money that is capable of being paid"); *Case v. State Farm Mut. Auto. Ins. Co.*, 241 Cal. Rptr. 3d 458, 471 (Cal. Ct. App. 2018) (finding that "the term 'payable' necessarily encompasses medical expenses eligible for payment through the workers' compensation system, regardless of whether the insured has submitted a claim for them").

Furthermore, the *Rutherford* court made it clear that the UIM Statute does not permit double recovery for a benefit that was already received, or could be received, pursuant to a workers' compensation claim. *See* 395 P.3d at 146.

Based on the arguments presented and relevant law the court finds that Plaintiff was only entitled to UIM coverage of his medical benefits after his workers' compensation benefits were exhausted and, as previously stated, there is no dispute that Plaintiff chose not to exhaust his available remedies related to his workers' compensation claim.

Plaintiff resists this conclusion, arguing that the court should look to the latest version of the UIM Statute, which went into effect July 1, 2024, as evidence of the Utah legislature's intent in drafting the relevant provisions (ECF 24 at 24). According to Plaintiff, the Utah legislature "likely recogniz[ed] the potential confusion caused by the language of the statute" and therefore "removed the 'paid or payable' language entirely" (*id.*). Under Utah law however the court "must apply the law in effect at the 'time of the occurrence' regulated by that law." *State v. Clark*, 251 P.3d 829, 833 (Utah 2011) (quoting *OSI Indus. v. Utah State Tax Comm'n*, 860 P.2d 381, 383 (Utah Ct. App. 1993)). The same principle is true under federal law. *See Vartelas v. Holder*, 566 U.S. 257, 266 (2012) (noting that under "the principle against retroactive legislation . . . courts read laws as prospective in application unless Congress has unambiguously instructed retroactivity"). Plaintiff has not provided any case law or other authority demonstrating that the court can or should apply the most current iteration of Utah's UIM Statute to his claim.

What's more, the court agrees with Defendant that even if the current UIM Statute applied, Plaintiff would still not be entitled to recover duplicative medical benefits under the UIM Statute and the Workers' Compensation Act (ECF 28 at 18). In the current version of the UIM Statute, the relevant provision states that UIM coverage, "in order to avoid double recovery, does not cover

any benefit under . . . [the] Workers' Compensation Act, or . . . provided by the workers' compensation insurance carrier." Utah Code Ann. § 31A-22-305.3(4)(c)(i) (2024). As discussed above, the court finds that this provision demonstrates that UIM coverage should be treated as a secondary source for benefits to those received through a workers' compensation claim , and the *Rutherford* court's interpretation of the statute, that it is "clear" that "UIM coverage applies only after the workers' compensation benefits have been exhausted," *see* 395 P.3d at 146, is applicable to the most recent iteration of the UIM Statute. Consequently, the court finds that the current version of the UIM Statute does not support Plaintiff's position that he can maintain his UIM claim for medical benefits when he has already received those same benefits—albeit less than he would have liked—pursuant to his workers' compensation claim.

In a final effort to preserve his UIM claim for medical damages, Plaintiff also encourages the court to apply the definition of "payable" included in Black's Law Dictionary (ECF 24 at 24). Plaintiff however was unable to provide any support for his position that this dictionary definition of "payable" supersedes the persuasiveness of relevant case law from other jurisdictions, wherein courts interpretated "payable" in contexts similar to the one at hand. Moreover, the court is not convinced that the definition proffered by Plaintiff is as decisive on the matter as he maintains. The definition of "payable," that Plaintiff relies on, defines the term as "[o]f a sum of money or a negotiable instrument[] that is to be paid" (*id.*) (quoting *Payable*, Black's Law Dictionary (11th ed. 2019)). In Plaintiff's view "payable" thus includes "benefits that have been awarded or that are owed, but that have not yet been paid" (ECF 24 at 24). While "payable" would seem to include the category of benefits referenced by Plaintiff, the court also notes that the Tenth Circuit in *Trujillo* similarly considered the dictionary definition of "payable" and the court nevertheless determined that, in applying those definitions, "the worker's compensation benefits . . . payable to

[the applicant]" reasonably included those amounts that were "capable of being paid" or "justly due." *See* 203 F.3d at 737. In applying the *Trujillo* court's reasoning to Plaintiff's situation, "payable" encompasses the workers' compensation benefits that he received and the amount that he could have received if he had been successful in appealing the decision of the workers' compensation carrier. The court thus finds that Plaintiff's reliance on the dictionary definitions of "payable" is misplaced and does not persuade the court that his medical damages pursuant to his workers' compensation claim are not "paid" or "payable."

For the foregoing reasons, the court finds that Plaintiff's UIM claim for medical damages is precluded by Utah's UIM Statute.

> ## 2. UIM Policy Exclusions

Even though Utah's UIM Statute demonstrates that Plaintiff is not entitled to recover medical benefits through UIM coverage without first exhausting those benefits available to him through his worker's compensation claim, the court also finds it necessary to compare the statutory provisions governing UIM coverage with Defendant's Policy provisions. Defendant maintains that the Policy, which was issued to Plaintiff's employer in 2019, contains a UIM coverage provision which precludes recovery for any "direct or indirect benefit of any insurer or self-insurer under any workers' compensation, disability benefits or similar law" (ECF 23-8 at 46). The Policy further stated:

> [Defendant] will not make a duplicate payment under this coverage for any element of "loss" for which payment has been made by or for anyone who is legally responsible, except for any portion of such payment that a person is not entitled to receive pursuant to Utah Code Ann. Section 34A-2-106(5).

> [Defendant] will not pay for any element of "loss" if a person is entitled to receive payment for the same element of "loss" under any workers' compensation, disability benefits or similar law.

(*id.* at 47). Defendant points out that Plaintiff was engaged in the course and scope of his employment at the time of the automobile accident, he "was 'en route' to service a customer, he was using a company provided tablet and service application, he continued to work after the accident, and his employer reported his alleged injury as a workers' compensation claim" (ECF 23 at 18). "Based on these facts," Defendant asserts that "workers' compensation was obligated to pay benefits, including all medical expenses for all injuries that were caused by the accident" (*id.*). "Because workers' compensation law and benefits apply to Plaintiff's accident–related medical expenses," Defendant believes that "the UIM Policy exclusions apply and Plaintiff is precluded from recovering medical expenses under the UIM coverage" (*id.* at 18–19). The court finds that the plain language of the Policy supports Defendant's interpretation, and the Policy terms thus preclude Plaintiff from seeking medical damages pursuant to his UIM claim.

Plaintiff seeks to avoid application of this provision in the Policy by arguing that the "policy language cannot validly restrict Plaintiff's benefits further than allowed by Utah's minimum statutory scheme for UIM benefits" (ECF 24 at 25). In general, Utah law supports Plaintiff's position that an insurance policy cannot limit an insured's right to receive certain benefits that are provided for by statute. *See*, *e.g.*, *Bear River Mut. Ins. Co. v. Wall*, 937 P.2d 1282, 1291 (Utah Ct. App. 1997) ("[A]n insurance policy may not limit the insured's right to receive minimum [personal injury protection] benefits as provided by Utah law, as this would violate those provisions of the Utah no-fault statute."). But as discussed above, the court did not agree with Plaintiff's interpretation of Utah's UIM Statute, nor was it persuaded by Plaintiff's definition of what benefits are considered "paid" or "payable." *See supra* Part III.A.1. Consequently, the court does not find that the Policy limits Plaintiff's right to receive benefits that are provided for under Utah law.

Defendant has demonstrated that the Policy exclusions apply to Plaintiff's situation and

that the Policy exclusions are not contrary to Utah law. Accordingly, the court finds that Plaintiff's

UIM claim for medical damages is precluded by the Policy. Based on Utah's UIM Statute and the

Policy, the court grants summary judgment in favor of Defendant on Plaintiff's request for medical

damages pursuant to his breach of contract claim.

### B.    Breach of the Covenant of Good Faith and Fair Dealing

"As a general rule, 'every contract is subject to an implied covenant of good faith.'" *Brown*

*v. Moore*, 973 P.2d 950, 954 (Utah 1998) (quoting *Brehany v. Nordstrom, Inc.*, 812 P.2d 49, 55

(Utah 1991)). In an insurance context, the "implied obligation of good faith performance

contemplates, at the very least, that the insurer will diligently investigate the facts to enable it to

determine whether a claim is valid, will fairly evaluate the claim, and will thereafter act promptly

and reasonably in rejecting or settling the claim." *Beck v. Farmers Ins. Exch.*, 701 P.2d 795, 801

(Utah 1985).

Plaintiff's second claim for relief is for Defendant's alleged breach of the covenant of good

faith and fair dealing (ECF 6 at 3).[13] In support of this claim, Plaintiff alleges that Defendant (1)

"failed to make a full investigation and adequately evaluate" his claim, (2) "failed to negotiate

reasonably with Plaintiff and only offered amounts far below the reasonable value of Plaintiff's

claim," and (3) "failed to take into account Plaintiff's full medical treatment rendered and

---

[13] In the Motion, in Plaintiff's response, and in Defendant's reply, the parties each reference at various points a "bad
faith" claim (*see e.g.*, ECF 24 at 2). However, "'bad faith' is not generally a distinct cause of action from the breach
of the implied covenant of good faith and fair dealing." *Kex Distribution v. Hanover Ins. Co.*, No. 2:20-cv-874-HCN-
CMR, 2024 WL 4349159, at *5 (D. Utah Sept. 30, 2024) (quoting *Zurich Am. Ins. Co. v. Ascent Constr., Inc.*, No.
1:20-cv-00089-DBB, 2022 WL 36878, at *4 (D. Utah Jan. 3, 2022)). At the hearing, Plaintiff confirmed that he is not
asserting a stand-alone bad faith claim and that any reference that the parties made to "bad faith" was referring to
Plaintiff's claim for the breach of the implied covenant of good faith and fair dealing (ECF 31).

recommended for Plaintiff due to the subject accident, without a reasonable basis" (*id.* at 4). For this alleged breach Plaintiff's only claimed damage is for attorney fees (ECF 24 at 1).

In the Motion, Defendant seeks dismissal of this claim on the grounds that Plaintiff "suffered no damages," he lacks standing, and he failed to invoke arbitration (ECF 23 at 22). Additionally, Defendant argues that Plaintiff's UIM claim was "fairly debatable" which, under Utah law, means his claim for breach of the implied covenant fails as a matter of law (*id.* at 29). Because the court agrees that Plaintiff's claim was fairly debatable, it need not consider Defendant's alternative grounds for dismissal. The court did however find it necessary to also consider Plaintiff's argument that Defendant did not act in accordance with its duty to act "promptly" in either rejecting or settling the claim. Ultimately, for the reasons set forth below, the court finds that Plaintiff did not present a basis on which the court should deny Defendant's Motion concerning this claim.

### 1.    Fairly debatable

"An analysis of whether an insurance claim is fairly debatable is closely related to an analysis of whether an insurer fulfilled its duty . . . to evaluate the claim fairly." *Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 305 (Utah 2012). "Under Utah law, if an insurer denies an 'insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant if it chooses to do so.'" *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533–34 (Utah 2002) (quoting *Morris v. Health Net of California, Inc.*, 988 P.2d 940, 941 (Utah 1999)). This issue can sometimes be decided as a matter of law, and summary judgment appropriately granted, where "the evidence presented creates a factual issue as to the claim's validity." *Prince*, 56 P.3d at 535 (quoting *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct.App.1987)); *see also Pheasantbrook Home Owners Ass'n v. The Travelers Indem. Co.*,

152 F. Supp. 3d 1342, 1360 (D. Utah 2016) ("Not all cases involving the 'fairly debatable' defense can be resolved as a matter of law, but '[w]hether an insured's claim is fairly debatable *under a given set of facts* is . . . a question of law.'" (quoting *Jones*, 286 P.3d at 303–05)).

Defendant presents four independents reasons in support of its assertion that Plaintiff's UIM claim was fairly debatable: (1) in denying the claim Muller—the primary claims representative responsible for reviewing Plaintiff's claim—relied on expert opinion; (2) Muller relied on "photos of the vehicles" after the accident, "witness statements, and the fact that neither vehicle has been repaired" to draw a reasonable conclusion on causation; (3) it was a fairly debatable question of law as to whether Plaintiff would be able to recover medical damages for his UIM claim; and (4) "general damages are by definition fairly debatable" (ECF 23 at 30–33). In response, Plaintiff asserts that Muller improperly rejected the opinions of Plaintiff's treating providers in favor of her own "common sense," and that "Utah case law indicates that if an insurer rejects a medical opinion without obtaining a contrary medical opinion from a medical expert, a plaintiff may bring a bad faith claim," and the issue should be decided by a jury (ECF 24 at 2–3). In considering this claim, the court found the most persuasive points in favor of granting the Motion to be (a) that it was a fairly debatable question of law as to whether Plaintiff would be able to recover medical damages for his UIM claim based on the applicable workers' compensation exclusions and (b) that Muller relied on expert opinion in reaching her decision.

### a.   *Muller had a justifiable belief that a workers' compensation exclusion applied to Plaintiff 's UIM claim*

The court begins with Defendant's argument that Plaintiff's UIM claim was fairly debatable because Muller based her decision, in part, on her concern that a potential coverage dispute existed as to whether UIM benefits were available to Plaintiff given the workers' compensation exclusions as set for under the Policy and state law (ECF 23-10 at 12–15). In

response to the Motion, Plaintiff disputed the underlying factual assertion that his claim was precluded by the Policy and state law but Plaintiff readily agreed there was no dispute that this concern was part of Muller's calculus in denying his claim (ECF 24 at 17). As discussed more thoroughly above, Defendant and Muller were correct that Plaintiff's UIM claim for medical damages was precluded by the UIM Statute and the Policy. *See supra* Part III.A. In other words, Plaintiff's UIM claim for medical damages was properly denied by Defendant. This demonstrates that Plaintiff's claim was fairly debatable.

Utah law acknowledges "an insurer cannot be held to have breached the covenant of good faith 'on the ground that it wrongfully denied coverage if the insured's claim, although later found to be proper, was fairly debatable at the time it was denied." *Jones v. Farmers Ins. Exch.*, 286 P.3d 301, 304 (Utah 2012) (quoting *Billings ex rel. Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996)). On the other hand, where a claim was properly denied by the insurer, as it was here with respect to Plaintiff's UIM claim for medical damages, summary judgment is appropriate on the related breach of the implied covenant claim. *See, e.g.*, *Ctr. for Excellence in Higher Educ., Inc. v. RSUI Indem. Co.*, 375 F. Supp. 3d 1217, 1230 (D. Utah 2019) (applying Utah law and finding that "[r]easonable minds cannot differ" and "summary judgment is appropriate on [the plaintiff's] breach of the implied covenant claim" because the court had already determined that the defendant insurance company "properly denied coverage"). Accordingly, Defendant's justifiable belief that a workers' compensation exclusion applied to Plaintiff's UIM claim entitles Defendant to summary judgment concerning Plaintiff's breach of the implied covenant claim.[14]

---

[14] Granting summary judgment in favor of Defendant on this point is further consistent with other persuasive sources, one of which states:

> A group health insurer which has a justifiable belief that a workers' compensation exclusion applies will not be held liable for penalty and attorney's fees for failure to make a timely payment to the insured. Thus, where an insured under a group health and accident policy sought hospital and medical expenses, the insurer's refusal to pay within 30 days was justified under a record showing

### b. *Muller relied on expert opinion in denying Plaintiff's claim*

Beyond properly denying Plaintiff's UIM claim for medical damages, the court also finds that the first point raised by Defendant—that Muller relied on expert opinion—demonstrative of the fact that the entirety of the claim was fairly debatable. "Utah courts have held that an expert's report generally provides a good faith basis for an insurer's defense of a bad faith claim." *Eldredge v. State Farm Mut. Auto. Ins. Co.*, No. 2:12-cv-900-DAK, 2014 WL 1875663, at *6 (D. Utah May 9, 2014) (referencing *Prince*, 56 P.3d at 535); *see also Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987) (same).

In this matter, Muller testified that she relied on expert opinion in reaching her decision to deny Plaintiff's claim (ECF 23-10 at 59). Specifically, she relied on Berg's, the radiologist, review of the MRI results and his opinion that the tear was "remote" indicating that "it was not an acute tear" (*id.*). Defendant also points out that it received additional expert opinion from its correspondence with the workers' compensation carrier regarding its decision not to provide Plaintiff any further benefits related to the accident (ECF 23 at 30; ECF 28-9). A representative for the workers' compensation carrier responded to Defendant's inquiries, stating that they declined to cover Plaintiff's MRI and shoulder surgery "due to the mechanism of injury" not being "consistent with the diagnosis" (ECF 28-9 at 2). And when asked whether an independent medical examination was done, the workers' compensation carrier's representative responded that there

---

that the insurer had received a report that the insured was also employed part-time by another employer and performed functions for that employer the day before the insured's injury, and received conflicting reports from different sources as to whether the injury arose out of the course of employment within a policy exclusion.

14A Jordan R. Plitt et al., *Couch on Insurance* § 207:49 (3d ed. November 2024 update). The court finds this particular treatise persuasive on this issue as it is often relied on by Utah courts in resolving insurance matters. *See, e.g.*, *UMIA Ins., Inc. v. Saltz*, 515 P.3d 406, 413 n.5–6 (Utah 2022); *Prince v. Bear River Mut. Ins. Co.*, 56 P.3d 524, 533–35 (Utah 2002); *Farm Bureau Mut. Ins. v. Weston*, 540 P.3d 660, 683–84 (Utah Ct. App. 2023).

was a nurse, a medical doctor, and regional medical director "on file" (*id.* at 1). While this response was not exactly clear as to whether an independent medical examination was done, Muller testified that the denial of Plaintiff's claim was based in part on this correspondence and specifically the representations that a nurse and a doctor had reviewed Plaintiff's claim (ECF 23-10 at 59). Still, in Muller's view, it was Berg's review of the MRI and medical opinion that was the "most important" piece of evidence that she relied on in denying Plaintiff's claim (*id.*).

In response to Defendant's expert opinion argument, Plaintiff focuses on Sonnenberg's opinion that Plaintiff's injury was caused by the accident (ECF 24 at 30–31).[15] Defendant acknowledges Sonnenberg's initial report, evaluation, and opinion regarding Plaintiff's injury, but points out that Berg's MRI review directly contradicts this opinion (ECF 23 at 30). In light of this additional expert testimony that Muller relied on, particularly that of Berg's, Defendant argues "it had no obligation to defer to [Sonnenberg]" (*id.* at 31). Plaintiff also argues with some force that Muller's reliance on the assurances of the workers' compensation carrier—that there was a nurse, a doctor, and regional medical director on file—was not reasonable, stating that Muller "did not have the report from that medical review when she made her decision," so "effectively, [Muller] did not rely on a contrary medical opinion herself, but rather she only relied on a workers' compensation adjuster's assurance that some kind of medical report had been obtained" (ECF 24 at 31). Thus, in Plaintiff's view, a "jury could reasonably decide that that reliance was an unreasonable basis to deny Plaintiff's claim" (*id.*).

Plaintiff has not provided any legal support for this position. Thus, the court has no way to determine whether this reliance was in fact reasonable. But Plaintiff forgets that Muller did not

---

[15] Curiously, Plaintiff's argument is silent as to the contrary conclusions reached by Berg (ECF 24). This is perhaps because of Plaintiff's objections to Berg's report on hearsay grounds (*id.* at 10). This objection is ineffective at demonstrating Berg's report constitutes inadmissible evidence because, as already explained, the report is not being offered for the truth of the matter asserted. *See supra* note 1.

just rely on the representations of the workers' compensation carrier, Muller stated that the "most important" piece of evidence that she relied on was Berg's opinion (ECF 23-10 at 59). Based on the undisputed facts, in particular the fact that Muller testified that she relied on expert opinion as a basis for her denial of Plaintiff's claim, the court agrees with Defendant that Sonnenberg's disagreement with the conclusions reached by different experts may not suffice to "breathe life into a bad faith cause of action." *See Eldredge*, 2014 WL 1875663, at *6.

Another point of contention raised by Plaintiff concerning experts is that, in Plaintiff's view, Defendant was required to hire its own medical expert to review Plaintiff's records and the failure to do so precludes granting summary judgment on his claim for the breach of the implied covenant (ECF; 31; ECF 24 at 30–31). This argument however is unavailing as Plaintiff has not presented any legal authority suggesting that Defendant had to hire their own medical expert. Absent persuasive authority to that effect the court fails to see why Defendant would need to hire its own expert where there were already various medical expert opinions on file, including those relied on by the workers' compensation carrier.

After considering the relevant case law and undisputed facts, the court finds that Muller's reliance on expert opinion demonstrates that she had a good faith basis for denying Plaintiff's claim.

## 2.    Whether Defendant acted "promptly" in resolving Plaintiff's UIM claim

Finally, the court turns to one additional point raised by Plaintiff on his implied covenant claim. According to Plaintiff, Defendant failed to act "promptly" in deciding Plaintiff's UIM claim (ECF 24 at 31–33). Under Utah law, the covenant of good faith performance contemplates that an insurer "will fairly evaluate the claim[] and will thereafter act promptly and reasonably in rejecting or settling the claim." *Billings*, 918 P.2d at 465 (quoting *Beck*, 701 P.2d at 801). Here, the

undisputed facts demonstrate that after Plaintiff filed his UIM claim it took, at most, four months for Defendant to reject this claim (*see* ECF 23-10 at 34; ECF 23-4 at 32). No argument was made that four months is an unreasonable amount of time for an insurer to render a decision on a claim. Instead, Plaintiff's argument on whether Defendant acted "promptly" focuses on events that occurred after the claim had been rejected. In essence, Plaintiff believes that Defendant should have been more responsive to his requests that they alter their decision and grant his claim. The legal support provided by Plaintiff however does not stand for the proposition that once a claim has been decided that the insurer has a duty to promptly "reconsider its position" as Plaintiff argues (ECF 24 at 33). More to the point, Plaintiff has not demonstrated that if a claim was "fairly debatable" that a claim for the breach of the implied covenant of good faith and fair dealing may still be pursued if there is evidence that an insurer did not act promptly in rejecting or settling the claim. The court therefore does not find Plaintiff's argument that Defendant failed to act "promptly" as an appropriate basis on which summary judgment should be denied.

Under this given set of facts, the court finds that Plaintiff's UIM claim was fairly debatable as a matter of law. Summary judgment is therefore appropriately granted in favor of Defendant as to Plaintiff's second cause of action for the breach of the covenant of good faith and fair dealing.

## IV.    ORDER

For the foregoing reasons, Defendant's Motion for Summary Judgement (ECF 23) is GRANTED IN PART and DENIED IN PART as follows:

1.    Defendant's request that Plaintiff's claim for breach of contract with respect to general damages be dismissed is DENIED;

2.      Defendant's request that Plaintiff's claim for breach of contract with respect to medical damages be dismissed is GRANTED and that claim is hereby DISMISSED with prejudice; and

3.      Defendant's request that Plaintiff's claim for the breach of the covenant of good faith and fair dealing be dismissed is GRANTED and that claim is hereby DISMISSED with prejudice.

4.      The court hereby sets this matter for a Zoom video status conference to discuss setting a trial date on Plaintiff's remaining claim for Tuesday, March 11, 2025 at 1:30 p.m.

IT IS SO ORDERED.

DATED this 18 February 2025.

Magistrate Judge Cecilia M. Romero
United States District Court for the District of Utah